
UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HADDIX, | No. 2:12-cv-0829 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and will grant defendant's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on April 29, 2008, alleging disability beginning October 1, 2007. Administrative Record ("AR") 130-36. His claim was denied initially on June 16, 2008, and again upon reconsideration on March 18, 2009. AR 76-80, 83-88. On November 20, 2009, a hearing was held before administrative law judge ("ALJ") Theodore Slocum. AR 25-68. Plaintiff was represented by an attorney at the hearing, at which plaintiff and a vocational

expert ("VE") testified. In a decision dated March 3, 2010, the ALJ determined that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] AR 11-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 29, 2008, the application date.
>
> 2. The claimant has the following severe impairments: mild osteoarthritis, history of acute myocardial infarction, and hepatitis.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

>finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c).
>
>5. The claimant is capable of performing past relevant work as an in-home caregiver and cleanup worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
>6. The claimant has not been under a disability, as defined in the Social Security Act, since April 29, 2008, the date the application was filed.

AR 21-29.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on February 1, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4.

## FACTUAL BACKGROUND

Born on December 5, 1952, plaintiff was 54 years old on the alleged onset date of disability, AR 130, and 56 years old at the time of the administrative hearing, see AR 30. Plaintiff is a high school graduate, with some community college coursework in welding. AR 31. He also has a certificate of completion of a three-month course in electronic assembly at the Center for Employment Training that he received approximately thirty years ago. AR 31-32.

Plaintiff worked in that past as a temporary worker, painter's helper, and construction worker / "metal builder." AR 146. He last worked as an in-house care provider for an elderly man for nine months.[2] AR 34. Plaintiff left that job after being accused of stealing money and since then has been leaving off of general assistance in the amount of $162 per month, about $200 in food stamps, and "picking up aluminum cans." AR 34-35, 37-38, 131-32.

Plaintiff does not have health insurance other than the county medical service plan, which gives him access only to Primary Care and emergency care. AR 37.

////

---

[2] It is not clear if plaintiff's last job ended in 2005 or 2007. At the hearing plaintiff insisted that he last worked in 2005, but his Disability Report Form 3368 indicates that he stopped working in 2007. Compare AR 34 with AR 145.

3

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error,

1 which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

2 ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

3 Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

4 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

6 Plaintiff argues that the ALJ erred by (1) failing to consider or even mention plaintiff's

7 chronic obstructive pulmonary disease (COPD) at step two of the disability analysis, (2) failing to

8 find or further investigate plaintiff's mental impairment at step two of the disability analysis, and

9 (3) improperly evaluating the medical opinion evidence concerning plaintiff's limitations.[3]

10 A.     Step Two of the Sequential Evaluation Process

11 At the second step of the sequential evaluation process, the ALJ found that plaintiff has

12 the following severe impairments: mild osteoarthritis, history of acute myocardial infarction, and

13 hepatitis. The ALJ also considered whether plaintiff had a mental health severe impairment and

14 ultimately concluded that he did not.

15 Plaintiff contends the ALJ made two mistakes at the second step warranting reversal and

16 remand. First, the ALJ failed to find that plaintiff's COPD constitutes a severe impairment.

17 Second, the ALJ failed to find or further investigate plaintiff's mental impairment.

18    1.  Legal Standards

19 "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

20 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants

21 whose medical impairment is so slight that it is unlikely they would be disabled even if age,

22 education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

23 At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

24 impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not

25 severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

---

[3] Although plaintiff raised these issues in a different order, the court addresses them in an order that more logically comports with the sequential evaluation process employed in social security cases.

5

more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

At the second step, plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.

2. Plaintiff's COPD

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (claimant bears burden at step two); Celava v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same); 20 C.F.R. §§ 416.908 (defining "physical or mental impairment"), 416.920(a)(4)(ii) (claimants will be found not disabled at step two if they "do not have a severe medically determinable physical or mental impairment that meets the duration requirement"). A medically determinable impairment must be established by signs, symptoms, or laboratory findings; it cannot be established based solely on a claimant's own statement of his symptoms. 20 C.F.R. § 416.908; Ukolov, 420 F.3d at 1004-05; SSR 96–4p, 1996 WL 374187, at *1 (July 2, 1996); see also 42 U.S.C. § 423(d)(3) ("physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques"). A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." Ukolov, 420 F.3d at 1005 (quoting SSR 96–4p, 1996 WL 374187, at *1

6

1   n.2 (July 2, 1996) (internal quotation marks omitted)); <u>accord</u> 20 C.F.R. § 416.928(b).

2         Plaintiff has failed to meet his burden of presenting evidence of medical signs, symptoms,
3   and laboratory findings establishing COPD. The only reference in the record to COPD comes
4   from an April 1, 2008 medical note from an unspecified individual at the Sacramento County
5   Department of Health and Human Services. <u>See</u> AR 521-22. These notes state only: "COPD [¶]
6   obvious [unintelligible] lung [unintelligible] [¶] still smoking [¶] maybe most limiting condition
7   [¶]." Consultative examiner Dr. N.S. Dhaliwal relied on this note in his November 23, 2009 letter
8   to plaintiff's counsel, writing that plaintiff was taking medicine for the COPD but stating that the
9   condition does not meet any listing. AR 541-42. The court finds that neither of these documents
10  indicates the completion of any medically accepted diagnostic test to confirm the diagnosis.

11        Even if the ALJ erred in failing to discuss this evidence, however, plaintiff bears the
12  burden of "showing that an error is harmful." <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).
13  Plaintiff contends that the ALJ's failure to consider COPD at all affected the outcome of this case
14  because "the distance between nondisability and disability in this case is small" and consideration
15  of the effect of COPD in determining plaintiff's residual functional capacity could have resulted
16  in finding less than medium capacity and thus could result in finding disability in this case. But
17  as defendant correctly points out, there is no evidence that plaintiff's COPD significantly limited
18  his ability to perform basic work activities for a twelve-month period. <u>See</u> <u>Molina v. Astrue</u>, 674
19  F.3d 1104, 1110 (9th Cir. 2012) (specifying that at the severe impairment stage, the impairment
20  alleged must have lasted 12 months (or would be expected to last twelve months)). There is
21  further no evidence to show that plaintiff was ever diagnosed with COPD, that he underwent a
22  pulmonary function test, or that he was treated regularly for COPD. Rather, the record shows that
23  plaintiff continued smoking and that he only occasionally felt shortness of breath. <u>See</u> AR 54-56.
24  With no evidence showing that plaintiff's COPD limited his ability to work, the court cannot find
25  that the ALJ erred by not explicitly considering this diagnosis at this or the subsequent steps of
26  the sequential evaluation process. If plaintiff believed that his COPD had an impact on his ability
27
28

to work, it was his burden to produce evidence supporting his claim.[4]  See Burch, 400 F.3d at 679 ("The claimant carries the initial burden of proving steps one through four of the analysis.").

### 3. Plaintiff's Mental Impairments

Pursuant to the analytical procedure prescribed by the regulations, after the ALJ determines that the claimant has a medically determinable mental impairment, he then rates the degree of the claimant's functional limitations in four areas, known as the "B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 1520a(b)-(c); see also Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders.  In the first three areas, the ALJ rates the limitations as either none, mild, moderate, marked, or extreme.  The fourth functional area, episodes of decompensation, is rated on a four point scale of none, one or two, three, and four or more.  20 C.F.R. 404.1520a(c)(3) and (4)).

In this case, the ALJ did not proceed to consideration of the B Criteria since he concluded that plaintiff does not have a medically determinable mental impairment:

> The undersigned has also considered whether the claimant has a severe mental impairment.  There is a note of depression in March 2009 but no medication or treatment has been required for depression.  There is certainly no longitudinal history of mental impairment.  Dr. Dhaliwal examined the claimant one time in November 2009 at the request of the claimant's attorney.  He reviewed a few select medical records but cited no severe mental impairments in the record.  He stated the claimant has dementia that needs further workup but did only a minor mental exam for which [he] gives no substantial details.  As noted, he cited no mental health issues in his summary of the claimant's treating medical evidence of record which included 292 pages of Kaiser records and three visits to Sacramento County.  The undersigned does not give weight to Dr. Dhaliwal whose opinion has no support from the claimant's medical evidence of record.  The undersigned has also considered whether the claimant has a substance abuse addiction that limits his ability to perform work activity.  The claimant admits to a history of drug abuse.  The records make occasional note of drug and or alcohol use, such as, in January 2008 he has positive tests for THC and opiates and in March 2009, he complains of pain all over and states he is self-medicating with alcohol and Dilaudid.

---

[4] To the extent plaintiff asserts that the ALJ erred by failing to develop the record, the court finds that the ALJ's duty to develop the record did not arise since the record was not ambiguous and the ALJ did not find that it was so inadequate that it prevents a proper evaluation of the evidence.  See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

> In general, the evidence makes little mention of substance abuse and there is no indication of any current DUI, incarceration or arrests for substance use, etc. The undersigned finds that there is no severe mental impairment.

AR 16.

Plaintiff argues that this finding was in error because the ALJ failed to properly evaluate evidence of his mental impairments and provided "no meaningful explanation" for his decision, especially in light of Dr. Dhaliwal's conclusion that plaintiff had dementia based on the results of a "mini mental exam," which plaintiff contends is sufficient to establish a medically determinable impairment.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In evaluating whether the Commissioner properly rejected a medical opinion, the court considers not only its source but also (1)whether contradictory opinions are in the record, and (2) whether clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See

1   Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate

2   reasons, the Commissioner must defer to the opinion of a treating or examining professional. See

3   Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence,

4   is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any

5   event, the Commissioner need not give weight to any conclusory opinion supported by minimal

6   clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating

7   physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

8         The court finds the ALJ's rejection of Dr. Dhaliwal's opinion to be support by clear and

9   convincing reasons. As the ALJ correctly pointed out, there is no longitudinal history of mental

10   impairment, Dr. Dhaliwal did not cite to medical records evidencing mental impairment, and Dr.

11   Dhaliwal's conclusion that plaintiff had dementia is based on a poorly supported "mini mental

12   exam." There are simply no medically accepted diagnostic tests confirming Dr. Dhaliwal's

13   impression of dementia. Accordingly, the court finds that the ALJ properly discredited Dr.

14   Dhaliwal's opinion.

15         As to the ALJ's finding that plaintiff does not suffer from a substance abuse addiction,

16   even assuming the ALJ erred in finding that this did not constitute a medically determinable

17   impairment, plaintiff has again failed to meet his burden to show that the impairment significantly

18   limited his ability to perform basic work activities for a twelve-month period. See Molina, 674

19   F.3d at 1110. Again, if plaintiff believed that an impairment had an impact on his ability to work,

20   it was his burden to produce evidence supporting his claim. See Burch, 400 F.3d at 679 ("The

21   claimant carries the initial burden of proving steps one through four of the analysis.").

22         Based on the foregoing, the undersigned finds that there exists substantial evidence to

23   support the ALJ's finding that plaintiff does not have a severe mental impairment or a substance

24   abuse problem.

25   B.     Dr. Dhaliwal's Opinion

26         The ALJ ultimately determined that plaintiff retains the residual functional capacity to

27   perform the full range of medium work. AR 17. This determination was based on review of the

28   medical records, plaintiff's testimony, and consideration of the consultative examiners. As to the

latter, the ALJ gave great weight to the opinion of consultative examiner, Dr. Jenna Brimmer, and no weight to plaintiff's consultative examiner, Dr. Dhaliwal. Plaintiff contends this was in error.

Dr. Brimmer conducted an internal medicine examination of plaintiff on March 10, 2009. AR 228-33. In addition to reviewing the medical records, Dr. Brimmer obtained plaintiff's medical and social history from plaintiff's self-reports. Her six-page report included review of the medical records, family and social history, medications, observations, examination results, analysis, general findings and diagnoses. Dr. Brimmer noted that plaintiff arrived 35 minutes late, gave vague and indirect responses, did not seem to give a reliable history, and seemed to have limited medical knowledge of his conditions. Plaintiff told Dr. Brimmer that he is able to cook, wash the dishes, mop and vacuum the floor, and do his laundry, but generally has not done so lately because he feels depressed. Following a full physical examination, Dr. Brimmer diagnosed plaintiff with right knee pain, history of myocardial infarction with a normal stress test, high cholesterol that is not being medically managed, elevated blood pressure that is not being medically managed, and a possible partial biceps tendon tear without any decreased range of motion or weakness in his right upper extremity. Dr. Brimmer provided the following functional assessment: plaintiff can stand and walk up to six hours because of his knee findings, he can sit without limitation, he does not need assistive devices, he can lift and carry 50 pounds occasionally and 25 pounds frequently, there are no postural or manipulative limitations, and there are no relevant visual, communicative, or workplace environmental limitations.

Immediately following the ALJ hearing in November 2009, plaintiff obtained a medical opinion from a consulting physician of his choice, Dr. Dhaliwal. AR 19, 541-42. Dr. Dhaliwal reviewed plaintiff's medical records, including Dr. Brimmer's report, and performed a "mini mental exam," the details of which are not provided. There is also no record of Dr. Dhaliwal conducting an independent physical examination of plaintiff. Dr. Dhaliwal summarized plaintiff's condition as follows:

> I think, I will summarize his condition to be 56 year old male with dementia which needs further work up and needs physical discount for carrying and lifting to maximum of 25 lbs and not more than 4 hours a day. I am sure going through the chart did not clarify but he sure is in bad health since his heart attack in 1/08. His poor health

> access makes him more vulnerable for poor health outcome especial [sic] with COPD and Coronary artery disease.

AR 541-42. Dr. Dhaliwal's report was very short and did not provide any details about the basis for his findings, such as references to specific medical records, methodology used in his "mini mental exam," or criteria used for his diagnosis of dementia. He opined that plaintiff could lift and carry a maximum of 25 pounds and not more than four hours per day.

The ALJ gave no weight to Dr. Dhaliwal's opinion for the following reasons: (1) the opinion was not written on doctor's letterhead, (2) there is no detailed physical examination, (3) the doctor cites to no medical records demonstrating severe chronic medically determinable physical or mental impairments, (4) Dr. Dhaliwal refers to knee and hip pain but the most recent medical record shows only minor left hip and low back strain with no trauma, (5) there is no treatment follow-up, and (6) Dr. Dhaliwal offered no exam-based findings to support his 25 pound lifting or less than four hours of work restrictions. Though not all of the reasons are a proper basis to discount Dr. Dhaliwal's opinion (e.g., opinion not written on letterhead), other reasons are clearly sufficient. See, e.g., Batson v. Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2004) (an ALJ may discredit a treating physician's opinion that is conclusory, brief and unsupported by the record as a whole, or by objective medical findings); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ rejected opinion of medical expert as unsupported by rationale or treatment notes, and offered no objective medical findings to support the doctor's conclusion).

Furthermore, Dr. Brimmer's report addressed the same issues but came to a slightly different conclusion, which the ALJ found to be better supported by the record that the ALJ specifically cited to in the decision. See AR 17-19. In light of this conflict between two examining physicians, whose opinions are of equal weight, the ALJ was entitled to resolve this conflict. See Sheffer v. Barnhart, 45 Fed. Appx. 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to provide specific and legitimate reasons for rejecting [two treating physicians' opinions]."); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the

12

1  ALJ's conclusion must be upheld."); Andrews, 53 F.3d at 1041 (requiring specific and legitimate
2  reasons only where the conflicting opinion is not based on independent clinical findings); Watson
3  v. Barnhart, 2003 WL 21838474, *4 (N.D. Cal. Aug. 1, 2003) (finding that ALJ decision was
4  consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ
5  "did not need to articulate specific and legitimate reasons for disregarding [another treating
6  physician's] opinion.").

7  On April 13, 2010, Dr. Dhaliwal submitted a letter in response to the ALJ's decision. See
8  AR 543-44. On April 9, 2010, Dr. Dhaliwal re-examined plaintiff and conducted a physical
9  examination, noting full range of motion in the right knee though with pain. He stated that the
10 medical evidence in the record—specifically, an October 7, 2008 x-ray of the right knee—shows
11 arthropathy (a generic term for arthritis). Dr. Dhaliwal opined that plaintiff needs work
12 restrictions for his knee, hips and back because he was convinced that plaintiff's problems stem
13 from arthritis. The specific cause was unavailable though until plaintiff received a full x-ray and
14 labs. Although Dr. Dhaliwal identified the nature of the physical exam conducted (range of
15 motion of right knee) and identified a 2008 medical record suggesting arthritis, the court finds no
16 material difference between this opinion and his earlier opinion. Since the ALJ was entitled to
17 resolve the conflict between Dr. Brimmer's opinion and Dr. Dhaliwal's opinion, the court finds
18 no error.

19     2.     The Treating Physician's 2008 Observation

20 Plaintiff also contends that the ALJ erroneously failed to mention or consider an opinion
21 of a treating physician, as documented in an April 1, 2008 medical note from the Sacramento
22 County Department of Health and Human Services. See AR 523. This note stated, simply, that
23 "[plaintiff is] able to walk 15-20 feet. Then stops [secondary] to diffuse fatigue, dyspnea and
24 diffuse leg pain." See id. Plaintiff argues that this constitutes an opinion of a treating physician
25 voicing a "clearly disabling [functional] capacity," corroborated by Dr. Dhaliwal's November 23,
26 2009 opinion which described plaintiff as being "worn out in general" and being "in bad health."
27 Pl.'s Mot. for Summ. J., ECF No. 16 at 5. Citing Social Security Ruling 96-6p, plaintiff argues
28 that "[a]dministrative law judges . . . may not ignore these opinions and must explain the weight

13

given to these opinions in their decisions." He further argues that because 20 C.F.R. § 416.927(b) requires that the ALJ "always consider the medical opinions in the record" and because 20 C.F.R. § 416.927(c) states that "[r]egardless of its source, we will evaluate every medical opinion we receive," the ALJ's failure to consider the April 1, 2008 medical note was an error.

While plaintiff is correct that generally the ALJ is required to consider relevant medical evidence and must expressly discuss his findings to permit courts to review ALJ's decisions, the ALJ need not discuss all evidence. He is only required to **"explain why significant probative evidence has been rejected."** Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir.2012) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative.") (citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

Here, although plaintiff asserts that this medical note is from a treating physician, authorship of the note is in fact unclear. See AR 523. Further, the medical note does not provide any details or explanation for the cause of plaintiff's fatigue and dyspnea. It could very well be that the condition and symptoms identified were temporary and would resolve within twelve months. See 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); Molina, 674 F.3d at 1110. Since the purported "functional capacity opinion" (1) fails to identify the qualifications of its author and his or her relation to plaintiff, (2) fails to specify a finding that the alleged impairment will persist for more than 12 months, and (3) fails to identify any tests or laboratory findings that support the opinion, the court finds no error.

## CONCLUSION

Because the court finds no error, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and

////

////

3. The Clerk of the Court is directed to enter judgment for the Commissioner.

DATED: January 9, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE